United States District Court
Southern District of Texas
**ENTERED**
July 07, 2021
Nathan Ochsner, Clerk

IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
GALVESTON DIVISION

No. 3:20-cv-328

McCall-SB, Inc.,
*Plaintiff*,

v.

Citibank, N.A.,
*Defendant*.

## MEMORANDUM OPINION AND ORDER

Jeffrey Vincent Brown, United States District Judge.

This dispute arises from the condemnation of leased property in Galveston County. After the landlord's lender claimed the condemnation proceeds, the tenant sought a declaratory judgment to the contrary. The tenant has also sued the lender for breach of contract, quantum meruit, and tortious interference with contract, claims which the lender has moved to dismiss (Dkt. 17). Because the court agrees with the lender on the breach-of-contract and quantum meruit claims, but not tortious interference, its motion to dismiss is granted in part and denied in part.

1

I. **Background**

Plaintiff McCall-SB, Inc., leases land along I-45 in Galveston County where it operates a car dealership.[1] CARS-DB4, which is not a party to this action, owns the land.[2] The defendant, Citibank, has lent money to DB4, but "is a stranger to the lease."[3]

After McCall and DB4 signed the lease, DB4 borrowed $1.7 billion from Citibank pledging "substantially all of its assets," including its interest in the lease, as collateral.[4] McCall and Citibank then separately executed a Subordination, Non-Disturbance, and Attornment agreement—an "SNDA."[5] The SNDA's purpose was to address the complications that arise when a lender attempts to foreclose on property that has an earlier-in-time—and thus higher-priority—lease.[6] To that end, McCall and Citibank executed the SNDA to subordinate the lease to Citibank's mortgage and preserve McCall's rights under the lease.[7]

---

[1] Dkt. 14 ¶ 8.
[2] *Id.*
[3] *Id.*
[4] *Id.* ¶¶ 11, 18.
[5] *Id.* ¶ 12.
[6] *Id.* ¶ 16.
[7] *Id.* ¶¶ 18–19; *see also* Dkt. 14-2 at 2–3 ("WHEREAS, [McCall] has agreed that the lease shall be subject and subordinate to the Mortgage held by [Citibank], provided that

A few months later, the State of Texas petitioned to condemn a roughly 10-foot-wide strip of the land fronting I-45 for road-expansion purposes.[8] The strip the State sought to condemn is marked in red below:



In the condemnation action, the State named both McCall and DB4 as parties. "The State also named [Citibank] based on its recorded Deed of Trust and certain financing statements concerning the property in the county records."[9] A couple of months later, the condemnation commissioners set the value of the condemned property at $743,871, which the State deposited into the condemnation court's

---

[McCall] is assured of continued occupancy of the Premises under the terms of the Lease . . . .").

[8] *Id.* ¶ 19.
[9] *Id.* ¶ 20.

registry.¹⁰ Though both McCall and DB4 objected to the amount of the award, Citibank neither objected nor even filed an appearance.¹¹

"Over the next three years, the State, on the one hand, and [DB4] and [McCall], on the other, litigated the issue of the value of the property to be condemned and thus to be paid as a final condemnation award."¹² McCall notes that it "devoted substantial time and energy to the prosecution" of the case and that it "worked cooperatively" with DB4 "toward the common goal of enhancing the condemnation award."¹³

But things changed in the summer of 2020.¹⁴ After the condemnation court set a mediation deadline and a trial date, the State increased its offer to $3.2 million.¹⁵ It was only then that DB4 informed McCall that Citibank "was entitled to the entirety of any condemnation award, including interest, that might be obtained."¹⁶

---

¹⁰ *Id.* ¶ 28.
¹¹ *Id.*
¹² *Id.* ¶ 29.
¹³ *Id.*
¹⁴ *Id.* ¶ 30.
¹⁵ *Id.* ¶ 32.
¹⁶ *Id.* (emphasis removed).

4

From then on, DB4 ceased cooperating with McCall and never wavered from the position that Citibank was entitled to the entire award.[17]

Then, about a week before the mediation and over three years after it had been served by the State, Citibank appeared in the condemnation action.[18] In its notice of appearance, Citibank objected to the commissioners' valuation and claimed all of whatever was ultimately awarded.[19]

At the mediation, the parties settled on $3,600,000 as a full and final condemnation award and later so stipulated in an agreed judgment.[20] But though the judgment resolved value, it did not address the "proper apportionment" of the award.[21] Instead, the judgment specifically provided that allocation would be "addressed at a future date based upon either an agreement of the defendants or a determination by an appropriate tribunal."[22]

McCall then brought the issue to this court, alleging that though it had tried to reason with DB4, Citibank had thwarted their negotiations.[23] And, McCall adds,

---

[17] *Id.* ¶ 33.
[18] *Id.* ¶ 35.
[19] *Id.*
[20] *Id.* ¶ 36, 38.
[21] *Id.* ¶ 38.
[22] *Id.* (citing Dkt. 14-3).
[23] *Id.* ¶ 40.

5

Citibank even interjected itself in talks about whatever restoration the land might require after the State completed the road expansion.[24] This interjection occurred, McCall complains, despite Citibank being a "stranger to the lease."[25]

McCall now seeks a declaratory judgment that Citibank has no right to the condemnation award.[26] McCall also asserts claims for breach of contract, quantum meruit, and tortious interference.[27] In response, Citibank has moved to partially dismiss, contending that McCall has failed to state claims for breach of contract, quantum meruit, and tortious interference.[28]

The court will address each claim in turn.

## II. Analysis

### A. Breach of Contract

McCall argues that Citibank breached the SNDA in two ways: first, by claiming that the subordination of the lease impaired McCall's right to the condemnation award; and second, by inserting itself into the negotiations relating to not only the condemnation award but also McCall's restoration obligations under

---

[24] *Id.* ¶ 41.

[25] *Id.*

[26] *Id.* ¶¶ 45–48. McCall alternatively seeks a judgment that Citibank's rights, if any, are derivative of DB4's under the lease.

[27] *Id.* ¶¶ 49–67.

[28] Dkt. 17.

the lease.[29] According to McCall, these actions breached the SNDA because Citibank agreed to not "interfere with or disturb" McCall's rights as a lessee.[30]

McCall relies on one of the SNDA's recitals, which provides McCall "assur[ance] of continued occupancy of the Premises under the terms of the Lease."[31] This general assurance, McCall argues, means that Citibank breaks its non-disturbance promise whenever it encroaches on McCall's rights in the lease—in this case, the right to the condemnation proceeds.[32] The operative provision, however, is not so broad:

> Non-disturbance of Tenant: [Citibank] does hereby agree with [McCall] that, *in the event [Citibank] becomes the owner of the Premises by foreclosure, conveyance in lieu of foreclosure or otherwise*, so long as there exists no Event of Default under the Lease (a) [Citibank] will take no action which will interfere with or disturb [McCall's] possession or use of the Premises or other rights under the Lease, and (b) the Premises shall be subject to the Lease . . . .[33]

In other words, the parties conditioned the non-disturbance provision on Citibank becoming the owner of the premises. But in its complaint, McCall acknowledges that Citibank "is not the owner" and notes that Citibank has

---

[29] Dkt. 14 ¶ 65.

[30] *Id.*

[31] Dkt. 14-2 at 2–3.

[32] *See* Dkt. 14-1 at 26–27.

[33] Dkt. 14-2 at 3 (emphasis added).

7

not "become the owner . . . by foreclosure, conveyance in lieu of foreclosure, or otherwise."[34] Thus, by the SNDA's terms and McCall's own allegations, the non-disturbance provision has not been triggered.

Rather than stick to the SNDA's plain text, McCall demands that to avoid an "unreasonable, oppressive, and absurd" result, the SNDA should be read to require "immediate non-disturbance duties."[35] But the court will not second-guess the "commercial sense"[36] of the parties' agreement. Indeed, doing so risks casting doubt on other parts of the SNDA subject to the same triggering condition.[37]

McCall maintains that imposing immediate non-disturbance duties (by ignoring the triggering condition) is the only way to square the SNDA's general recital with the specific non-disturbance provision. "Recitals," McCall reminds the court, "may be looked to in determining the proper construction of the contract and the parties' intent."[38] But this argument is

---

[34] Dkt. 14 ¶ 8; *id.* at 3 n.3.

[35] Dkt. 19 at 26.

[36] *Id.* at 24.

[37] *See* Dkt. 14-2 ¶ 3 (providing that McCall's obligation of attornment is triggered when Citibank "becomes the owner of the Premises by foreclosure, conveyance in lieu of foreclosure[,] or otherwise . . . .").

[38] Dkt. 19 at 21 (quoting *All Metals Fabricating, Inc. v. Ramer Concrete, Inc.*, 338 S.W.3d 557, 561 (Tex. App.—El Paso 2009, no pet.)).

flawed. As Citibank correctly observes, the recital "in no way limits the parties' ability to flesh out specific terms and conditions, and limitations, or expansions of the concepts contained in the recital."[39] Besides, if there were a conflict between the two, the specific non-disturbance provision would prevail over the general recital.[40] McCall's breach-of-contract claim is dismissed.

## B. Quantum Meruit

As alternative relief, McCall seeks to recover its condemnation-related expenses from Citibank via quantum meruit. This claim is proper, McCall argues, because its services (*i.e.*, enhancing the property's value) directly benefited Citibank, and Citibank simply sat back and allowed McCall "to prosecute the condemnation action" only to "swoop in at the eleventh hour" and claim the entire award.[41]

To recover under quantum meruit, the plaintiff must prove that (1) valuable services were rendered, (2) for the person sought to be charged, (3) the services were accepted, used, and enjoyed by the person sought to be charged, and (4) the person

---

[39] Dkt. 21 at 11.

[40] ANTONIN SCALIA & BRYAN GARNER, READING LAW: THE INTERPRETATION OF LEGAL TEXTS 167 (2012) ("If there is a conflict between a general provision and a specific provision, the specific provision prevails (*generalia specialibus non derogant*)."); *see Hughes v. Tom Green Cnty.*, 573 S.W.3d 212, 220 (Tex. 2019).

[41] Dkt. 14 ¶¶ 12, 53.

sought to be charged was reasonably notified that the plaintiff performing such services was expecting to be paid.[42]

Even assuming McCall can meet the first three elements, it fails to show that it can meet the fourth. McCall's primary contention is that Citibank is not entitled to the condemnation proceeds. It makes little sense, then, that McCall would seek to enhance to condemnation award for *Citibank's* benefit.[43] Likewise, because McCall asserts a right to split the condemnation proceeds with DB4 under the lease,[44] its pleadings fail to show that its efforts were undertaken "for the person sought to be charged"—Citibank. At best, and assuming Citibank correctly asserts a claim to the condemnation proceeds,[45] McCall's efforts merely, and unintentionally, benefitted Citibank. That is not enough.[46] McCall's quantum meruit claim is dismissed.

---

[42] *Hill v. Shamoun & Norman, LLP*, 544 S.W.3d 724, 732–33 (Tex. 2018).

[43] *See* Dkt. 19 at 27 (McCall stating that it "believed, when it undertook services to enhance the [a]ward, that it would benefit from the [a]ward").

[44] *See, e.g.*, Dkt. 14 ¶ 25.

[45] *See* section C, *infra*.

[46] *MetroplexCore, L.L.C. v. Parsons Transp., Inc.*, 743 F.3d 964, 975 (5th Cir. 2014) (stating that a "plaintiff must show that his efforts were undertaken for the person sought to be charged; it is not enough to merely show that his efforts benefitted the defendant") (quoting *Truly v. Austin*, 744 S.W.2d 934, 937 (Tex. 1988)).

## C. Tortious Interference

McCall lastly alleges that Citibank tortiously interfered with the lease by inserting itself into the negotiations about both the condemnation proceeds and the restoration obligations under the lease. This was improper, McCall insists, because Citibank is not entitled to the proceeds and is a stranger to the lease.

Citibank does not deny these interference accusations. Instead, it asserts two affirmative defenses—privilege and justification. For these defenses, Citibank contends that because the SNDA subordinates McCall's rights under the lease, Citibank may interfere with the lease because of its superior rights in the mortgage.[47]

Not at issue in this motion are the merits of McCall's declaratory-judgment claim: whether Citibank has a right to the condemnation proceeds.[48] Yet by ruling on Citibank's affirmative defenses, the court would have to accept Citibank's presupposition that it has a right, because of the SNDA and mortgage, to the condemnation proceeds. The court is not prepared to do that today.

\* \* \*

---

[47] *See* Dkt. 17 at 31–33 ("A party is privileged to interfere with the contractual relations of another if: [a] it acts in the bona fide exercise of its own rights; or [b] the interfering party has an equal or superior right in the subject matter to that of the party to the contract.") (citing *Baty v. ProTech Ins. Agency*, 63 S.W.3d 841, 857 (Tex. App.—Houston [14th Dist.] 2001, pet. denied); *Prudential Ins. Co. of Am. v. Fin. Review Servs., Inc.*, 29 S.W.3d 74, 81 (Tex. 2000)).

[48] Dkt. 14 ¶ 47(a).

In sum, the court grants Citibank's motion to dismiss McCall's breach-of-contract and quantum meruit claims, but denies the motion on McCall's tortious-interference claim.

Signed on Galveston Island on the 7th day of July, 2021.

_____
JEFFREY VINCENT BROWN
UNITED STATES DISTRICT JUDGE